UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DOUGLAS BOUCHER,

      Plaintiff,

  v.                                       Case No. 16-C-1722

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

---

## DECISION AND ORDER

---

This is an action for judicial review of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff Douglas Boucher challenges the Commissioner's decision denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. He contends that the decision is not supported by substantial evidence. In particular, he asserts that the Administrative Law Judge (ALJ) erred in failing to have a January 2015 MRI of his lower back assessed by a medical expert. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Boucher filed his application for disability and disability insurance benefits on May 21, 2013, alleging that he has been disabled since January 1, 2013, as a result of chronic back pain and Hepatitis C. R. 86. At the time of his application, Boucher was age 59 and lived with his wife in Marinette, Wisconsin. R. 86. While stationed in Germany with the Army in 1973, he spent multiple weeks in the hospital undergoing treatment for Hepatitis C. R. 47–48, 259. After he was honorably

discharged from the army, he spent several years working in a variety of roles as a metal fabricator, including as a welder, and he eventually began working in the shipyard at Marinette Marine. R. 49, 267–68.

During the late 1990s and early 2000s, Boucher had two surgeries (laminectomies) to address pain in his lower back. R. 60–62, 257, 442. Furthermore, by 2007 his Hepatitis C returned, causing him fatigue that ultimately prevented him from continuing his work as a welder, despite an initial effort to work reduced hours at the shipyard. R. 268. In 2008 he purchased a bar where he worked full time managing daily operations until 2010, when he claims he became too fatigued to continue working due to Hepatitis C treatments. R. 41–42, 50–51. Although he has not worked since 2012, Boucher still owns the bar where his wife works. R. 51.

Boucher's benefits application was denied both initially in September 2013 and on reconsideration in July 2015. R. 93, 102. He requested a hearing before an ALJ, and ALJ Jeffry Gauthier held a hearing on February 22, 2016. R. 31–84, 122.

At the hearing, Boucher, represented by counsel, and Vocational Expert (VE) Joe Entwisle both testified. R. 31–32. Boucher testified that the number one condition that was most severe and disabling was nausea, which he said he experienced in the morning and sometimes in the afternoon as well. R. 52. Boucher attributed the nausea to the treatment he received for Hepatitis C, though he had not required or received any treatment for it since 2010. R. 53. He said he would experience nausea five days out of the week, would sometimes vomit, and would not eat until 11:00 a.m. or noon. R. 54. Boucher also attributed his fatigue and weakness to Hepatitis C. R. 56. He testified that it limited his bike riding and walking to the point that he could not walk more than two miles. He would walk one or two miles with his wife three to four days a week for exercise. R. 57. His

2

bike riding was limited to three to five miles, which would take 30 to 40 minutes, and then his back gets too sore. Boucher also attributed his lack of stamina in shoveling snow and "a real bad numbness" in his legs to his Hepatitis C. R. 57–59.

The second problem Boucher discussed at the hearing was his back problem. He testified that he had two back surgeries in 1998 and 2003, but still has "a lot of pain" if he tries to do anything physical. He said if he's "not doing anything, pretty much just sitting around doing nothing, it's—it's not too bad." R. 59. In response to the ALJ's questions, Boucher clarified that the problem was in the lumbar region of his back where he had the surgeries. Describing the problem further, Boucher stated: "I mean the problem I have with my back is like my four-year old grandson if I pick him up and carry him, my back is going to hurt in just a matter of hours. It's going to start hurting and I take Ibuprofen." R. 60.

In response to further questions from his attorney, Boucher testified that his back pain radiates up into his neck and down into his legs. R. 63. He alleviates the pain by lying down or sitting back with his legs elevated, which he said he does a couple of times a day for about 15 to 30 minutes. R. 64. He testified that on some occasions he gets up at night because of back pain. *Id.*

In a ten-page decision dated August 24, 2016, the ALJ determined that Boucher is not disabled. R. 26. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 19–20. At step one, the ALJ concluded that Boucher met the insured status requirements through June 30, 2017, and that he has not engaged in substantial gainful activity since January 1, 2013, the onset date of his alleged disability. R. 20. At step two, the ALJ concluded that Boucher has one severe impairment: degenerative disc disease. R. 20. Although the ALJ acknowledged that the Department of Veterans

3

Affairs (VA) has determined that Boucher is 100% disabled as of June 4, 2012, due to fatigue associated with Hepatitis C, the ALJ concluded that it was not a severe impairment because it did not more than minimally limit his ability to perform basic work functions. In reaching this conclusion, the ALJ rejected Boucher's statements attributing his severe and disabling nausea to Hepatitis C because they were inconsistent with the medical and other evidence in the record. R. 21. At step three, the ALJ concluded that Boucher did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, noting in particular that his medical records did not indicate the presence of any of the criteria in listing 1.04 (disorders of the spine). R. 22.

Before proceeding to step four, the ALJ assessed Boucher's Residual Functional Capacity (RFC) and determined that he is capable of performing light work as defined in 20 C.F.R. § 404.1567(b), subject to several exceptions. R. 23. Specifically, the ALJ found that Boucher is capable of performing light work "except frequent crouching and climbing of ramps and stairs; occasional crawling and kneeling; no climbing of ladders, ropes, or scaffolds; frequent work around moving mechanical parts; frequent operation of a motor vehicle; and no work at unprotected heights." *Id.* Again in reaching this conclusion, the ALJ rejected Boucher's testimony and statements concerning the intensity, persistence, and limiting effects of his back pain because they were not "entirely consistent" with the medical and other evidence in the record. R. 24. The ALJ further found that Boucher "is expected to be off task less than 10 percent of the time in an eight hour workday, in addition to normal breaks." R. 23.

At step four, the ALJ then found that Boucher is capable of performing past relevant work. R. 26. The VE testified at the hearing that Boucher's work operating his bar fit the category of

4

manager of a liquor establishment, which is classified as a light, skilled position and which Boucher actually performed at a light exertional level. *Id.* The VE further testified that Boucher's RFC did not preclude him from performing that past relevant work. *Id.* Relying on that testimony, the ALJ found that Boucher could perform his past relevant work managing a liquor establishment and therefore had not been under a disability since his alleged onset date of January 1, 2013. *Id.* Boucher requested that the Appeals Council review the ALJ's decision, but the Appeals Council declined to do so. R. 1, 12. Boucher thereafter sought review in this court.

## LEGAL STANDARD

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 404 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636,

638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

On judicial review, Boucher does not contest the ALJ's finding that the number one condition he had that was most severe and disabling, his Hepatitis C, was not a severe impairment. R. 21–22, 52. Instead, he rests his entire argument for reversal of the ALJ's decision on a single argument: he contends that "the ALJ impermissibly 'played doctor' and made his own findings regard[ing] the MRI in this case." ECF No. 8 at 7. Because of this alleged error, Boucher argues that remand is required.

The Seventh Circuit has frequently cautioned that "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). This means that "ALJs must not succumb to the temptation to make their own independent medical findings." *Rohan*, 98 F.3d at 970. Moreover, "an ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." *Murphy*, 496 F.3d at 634 (citing *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Glembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Rohan*, 98 F.3d at 970–71; *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). But that is not what occurred here.

Boucher's medical records from the VA include the following report regarding the January 2015 MRI:

MRI lumbar spine without IV contrast

6

> L1-2: Mild posterior disc bulge.
>
> Mild left L3-4 NFN, neural foramina narrowing.
>
> L4-5: Mild posterior disc bulge abuts portions of right and left traversing nerve roots. Facet DJD and moderate right and mild left NFN.
>
> L5-S1: Mild posterior disc osteophyte. Mild facet DJD. Mild left NFN.
>
> Addendum: added [January] 28 2015.
>
> The L5/S1 posterior disc bulge is slightly larger left of midline where it abuts the traversing left S1 nerve root.
>
> Impression: Modest degenerative change.
>
> DX Codes: MINOR ABNORMALITY

R. 466–67; *see also* R. 404–05. The ALJ mentioned the January 2015 MRI twice when discussing the medical evidence with regard to lower back pain relevant to Boucher's RFC. R. 24. Both references to the MRI quote directly from the report. First, the ALJ noted that "[a] January 2015 MRI of the lumbar spine showed 'modest degenerative change,' with mild posterior disc bulges at L1-2 and L4-5, with the L4-5 disc bulge resulting in moderate right and mild left neural foramina narrowing." *Id.* Two paragraphs later, the ALJ stated that, "[a]s noted above, the January 2015 MRI showed 'modest degenerative changes' which the evaluating radiologist characterized as 'minor' abnormalities." *Id.*

In truth, it is Boucher who is playing doctor. He insists that the ALJ should have realized that the condition shown by the January 2015 MRI would likely have caused severe and disabling pain, despite his own radiologist's opinion that it showed only "modest degenerative change" and "minor abnormality." R. 405. When considered with the other evidence of record described by the

7

ALJ, Boucher's argument borders on the frivolous, especially in light of the deference that reviewing courts owe to administrative agencies.

The ALJ noted that even though Boucher alleged an onset date of January 31, 2013, his treatment records "do not document complaints of back pain until October 2013, when the claimant reported taking occasional use of an NSAID for back pain." R. 24 (citing R. 459–60). This was at his annual check-up at the VA Medical Center in Iron Mountain, Michigan. The ALJ noted that Boucher's physical examination at that time was "unremarkable." *Id.* (citing R. 460). Although Boucher told the intake nurse that he wanted to talk to his doctor about his hepatitis and "back discomfort," it appears the statement about his occasional use of NSAIDs was made in connection with the discussion of the effect of hepatitis on the liver and how medications are filtered in the body. R. 459. There is no other mention of back pain.

The ALJ went on to note that "despite contact with treating providers, the claimant's next report of low back pain was in January 2015." R. 24. To illustrate the point, the ALJ referenced a September 2014 primary care visit at which time Boucher did not complain of back pain at all and again had an unremarkable physical examination. *Id.* (citing R. 449). The only mention of his back at that time was in relation to his past medical history that listed the two prior laminectomies. R. 449. Even the January 2015 visit that resulted in the MRI was not occasioned by a request for medical treatment for a painful condition. "Rather," as the ALJ noted, "the record reflects the claimant requested a disability parking sticker in January of 2015 due to increasing low back pain." R. 24 (citing R. 440). In fact, the record reveals that Boucher was "upset" with his doctor and felt he was "not being treated for his issues" when he walked into the clinic and requested a parking sticker without any evaluation. He was told he would need an evaluation and diagnostic testing, and

8

when he agreed, he was provided a sticker. *Id.* After the relatively mild findings revealed in the MRI, the ALJ noted he was prescribed Naproxen, an anti-inflammatory pain reliever. At the hearing, he testified that he treats his back with Ibuprofen and occasionally prescription medication. *Id.*

The ALJ also considered Boucher's reported activities in evaluating his complaint of disabling back pain. He noted that his July 2013 Function Report, his medical records, and his own testimony revealed Boucher had no problems tending to his personal care; performing household chores, such as laundry, repairs, and mowing the lawn on a riding lawn mower; exercising by walking two miles a day and riding his bicycle for 10 to 15 miles; and fishing and camping two to four times a year. R. 24. Boucher also testified that he and his wife drove or flew to Texas once per year for 30 days to visit their daughter. In 2015, they drove to Texas, a trip that took three straight days of daytime driving for eight hours a day, a task he and his wife split evenly. R. 25 (citing R. 45–46). After discussing this evidence, the ALJ aptly noted, "[e]ven acknowledging the claimant's testimony that he did not report riding his bicycle daily, the remaining activities are not consistent with the claimant's allegations as to debilitating back pain. Rather, they demonstrate that, despite experiencing low back pain, the claimant has remained able to engage in a number of normal day-to-day activities, many of which involve at least a light exertional level." R. 25.

Finally, the ALJ also relied on the reports of the state agency reviewing physicians, the only medical sources who offered any opinion about Boucher's functional capacity. Both Dr. Mina Khorshidi and Dr. Janis Byrd reviewed the file and concluded that Boucher had no medically determinable impairment to his back. R. 91, 99. Although the ALJ found their opinions "largely consistent with the medical evidence of record at the time they rendered their opinions," he nevertheless concluded that "the evidence at the hearing level establishes the existence of a medically

9

determinable impairment related to the claimant's chronic back pain, namely, mild degenerative changes in the claimant's lumbar spine." R. 25.

Despite the ALJ's finding that, contrary to the opinions of Drs. Khorshidi and Byrd, he did have a medically determinable impairment related to his back, Boucher argues that the ALJ erred in relying on their opinions because neither considered the January 2015 MRI in arriving at their opinions. But that appears true only as to Dr. Khorshidi. Dr. Khorshidi reviewed Boucher's file at the initial level, and her September 2013 assessment obviously predates the January 2015 MRI at issue. R. 93. Dr. Byrd, however, evaluated Boucher's medical records at the reconsideration level in July 2015. R. 99. Dr. Byrd's summary of the evidence includes the following notation: "most current [medical evidence of record]: 1/15 lumbar xrays– mild abnormality." R. 99. Elsewhere, Dr. Byrd's evaluation notes that the medical records "from the VA do[] not have current substantial [medical evidence of record] since 1/15." R. 99.

Thus, unlike Dr. Khorshidi, it appears Dr. Byrd did have the January 2015 records on which Boucher's argument relies, even though she erroneously referred to them as x-rays instead of an MRI. But even if she did not, the record as a whole is more than sufficient to support the ALJ's conclusion that Boucher remained capable of light work and returning to his previous work as the manager of a liquor establishment. The reports of Boucher's own doctors who reviewed the MRI, along with Boucher's own testimony and the other evidence of his actual functioning, amply support the ALJ's conclusion that he was not suffering debilitating low back pain that rendered him unable to perform the duties such a position required. If Boucher thought otherwise, he was free to offer additional evidence, though in the face of the extensive evidence of his own activities, it is difficult to see what difference it would have made. On this record, it was not error for the ALJ to proceed

to a decision without seeking an additional medical opinion. The Commissioner's decision must therefore be affirmed.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated this 5th day of March, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court